Good morning. Good morning. May it please the court. Scott Geiser on behalf of appellant Leonard Mitchell, who is also with us in the courtroom. Uh, I'd like to reserve 3 minutes for rebuttal. The district court's order granting air India's motion to dismiss should be reversed with instructions to enter an order, denying the motion or alternatively to allow jurisdictional discovery. Uh, the standard review is DeNovo and I'd like to start. Since we're dealing with specific personal jurisdiction, the test that was to be applied, it's unclear from the district court order. What test exactly was applied? I do note at a point. There is the mention or the use of the words purposely directed. So it looks like the Calder test was applied, but it is not clear. But based on the instructions from this court recently in Davis, uh, versus Lufthansa, Briskin versus Shopify, it's not a rigid standard. Uh, both tests actually should be looked at, but also recently in in herbal brands versus photo Plaza, this court said that the purposeful availment test should be applied in contract in contract cases as well as unintentional tort cases that the call. Their effects test should be applied in an intentional torque. We're dealing with a negligence claim. So, based upon what this court has said in herbal brands, we should be 1st looking at this under purposeful availment, which is where I will start. And I think a couple cases to note that I think help guide us in this analysis. I was starting with Sinatra versus national inquire from this circuit. 854 F, 2nd, 1191 and talked about the fact that a non residence. Defendants act of soliciting business in the form state will generally be considered purposeful availment if that solicitation results in contract negotiations, or the transaction of business. Also, from the Supreme Court metal versus Superior Court of Solana. 480 US 102 in the plurality, Justice O'Connor said, and I quote. Marketing the product through a distributor who has agreed to serve as a sales agent in the form state may evidence purposeful availment and that that really is our case. And is your argument that Star Alliance is both advertising and selling the ticket that United is advertising and selling the ticket where who's doing the promotion in California? So, I think Star Alliance is doing the promotion, but United is the 1 that is actually doing the sales. They're the ones that have the agreement with air India to sell their tickets as part of this round world trip that is being promoted to California residents in exchange for a commission. And that's really what I focus on. I think what is the case here? Because the closest case in the entire country is that selkie versus German wings case. That is the closest factual matter that we have. But when I look at all of the different cases that deal with an injury such as this, that occurs on an airline or flight that originates outside of the United States, but results in injury. The commonality where either they find that there is. Personal jurisdiction in the, in the form or not seems to be. Where were the tickets purchased? And if they are purchased in the form, that is a big factor. Is there a commission arrangement and are these tickets all purchase as part of a package? And so, when you look at the cases that go our way coil, which is a. District court case at Oregon, 180 up 1160. Little different arrangement, the shoot versus carnival cruise lines case out of the 9th circuit. That was a commission arrangement on a cruise. Gullet versus Qantas Airways. 417 up 490. The selkie case for Gara versus aeroflight 390 up with respect to the transactions. That put Mr Mitchell in Mumbai. Yes, what actor is there in California? Other than united it, so it is united and that that that is the. The analysis, so air India authorizes. United to sell tickets on its behalf and under California law, that is effectively an agency type of arrangement. I know this court asked before argument to look at 3 different cases, 1 of which being the Yamaha case, and I assume because it dealt with the issue of agency that that is a different scenario. And you're looking at parent subsidiary liability. We're not looking at that. We're looking. I don't think that's limited to a parent subsidiary liability. No, I includes agency liability. It does talk about agency liability and the focus was, well, do you have the ability to control the agent, which you do? I mean, united has banshaw, right? So if he if he went on your theory of agency, suppose that, you know, different facts. He goes to the United counter at LAX to buy his ticket. And as he's going up to the United counter, you know, he, you know, slips and falls or like, you know, they the United ticket agent, you know, commits some tort. You think he could sue air India because, like, it's an agency relationship? Well, that would be a different scenario because area. Well, that would be a different scenario. But I'm like, it is the logic of your position that air India would be subject to personal jurisdiction based on that. So if I mean, I'd have to go to and find that the reason that he slipped and fall had something to do with air India's actions. Right. Because obviously, well, I mean, I thought on your theory of agency, like we can impute if United is negligence and that's imputable to the principle. No. So United is not negligence here. So the negligence occurs through air India employees helping him board the plane. So then that that is not what what's at issue. There's no dispute that the claim of negligence. So you're saying we can impute United's actions to air India, not for purposes of liability, but just for purposes of assessing contacts or personal jurisdiction? Exactly right. So for the purposes of determining whether or not air India purposely availed itself of the benefits of California such that it can be held accountable in California for its negligence acts that occurred boarding this flight in Mumbai, based on the cases you look at, yes, the fact that air India purposely availed, directed whichever test you actually want to look at, because I think you can do it under purposely direct to they are choosing to be part of a package that originates out of California that is focused on California residents. This incident doesn't occur out of any contact establishing availment of air India. I believe it does. So in California, what contact is that other than United selling the ticket? Well, that is that is the contact. The contact is the decision to sell a ticket or be part of a ticket package that is going to originate and be promoted to California residents. You also mentioned Star Alliance. Does that mean your answer would be the same to the other 25 airlines that are part of Star Alliance? If they were part of the package. So it's in the record, all the different legs that were purchased as part of this package. This particular case, but vis a vis the establishment of personal jurisdiction. Sure. So out of Lufthansa had flights going in and out of San Francisco International has the same contacts that that Air India has. If if that was if that was the the flight where the incident occurred, United would then be an agent with substantial control by Lufthansa. So if I'm understanding, if Lufthansa was one of the legs in the package that was purchased and authorized United to sell that package or that flight in exchange for a commission and the injury happened due to Lufthansa, yes, then Lufthansa would be the one that would be liable in that situation. And I find that consistency in the personal jurisdiction in California.  Exactly. I mean, if you just substituted which flight it happened, but it was still part of the package, then yes, because each of those each of those 26 other airlines would have it substantial control using the Yamaha test over United. Well, not necessarily because I mean, each member of the Star Alliance was not part of this package.  Only with respect to Mr. Mitchell. Right. And I think but it's it's a confederation that exists in Frankfurt. Right. I mean, they're all part of the same operation. And this was just nothing in the record that suggests that this is anything unusual. And this and this execution of the of the of the Star Alliance program, nothing in the record that that suggests that I'm not I'm not sure what you're so Star Alliance, like one world or whatever, the collections of airlines that decide to affiliate together and work together in exchange for different arrangements. And so we're dealing with the Star Alliance package now of the Star Alliance Airlines. We would only be looking at any Star Alliance airline that chose to participate in this particular package that was being sold to California residents in exchange for a commission. Again, if Lufthansa was not part of this package, then there would be no jurisdiction over Lufthansa just because it was part of the Mitchell was who picked who his partners. He was the one who picked which airlines he was going to fly on. No. And that that that was the testimony in that that is in the record is this is a specific package and it says in there you have to fly these flights in this order in order for this to be valid. So there isn't that discretion. So example. But that can't be right. I mean, if he didn't want to stop in some place, I mean, he had there he must have said I want to go to these places and then they gave him those tickets. Correct. But what airlines can he use? So as an example, I don't know what other airlines fly that are Indian based airlines, but I'm assuming whatever the other one is, that's not part of the Star Alliance would not be available as part of the package. You could only buy Air India to fly within India because that is true. I assume part of your argument in response is that if Air India didn't want to be part of these packages, it could say, I don't want to sell to people from California.  To support that, would we need more discovery? Well, that that is one thing. And that's why I asked for it. And we don't have and did not have the opportunity to get in exactly what the arrangement was. The Air India attorney did admit on the record that there was a interline agreement of some kind and that Air India would get a commission. But when I asked for let me get the extent of what this thing is, let me actually look at the contract. What are the details? I was not granted any of that. The jurisdictional discovery was denied. I agree. If there was a jurisdictional discovery that one of the issues that would have to be addressed is substantial control by Air India over United. I think the substantial control over what United is allowed to do and is allowed to sell. Yes. I mean, you know, agency relationships are limited based upon the terms is that we would have to find out what those terms are. And we didn't have that opportunity. Do you think you need them to be a full agent in the sense of agency law? Or do you think you just need them to be a seller of tickets for their purpose? I think it just needs to be a seller of tickets. There's actually a good discussion in the Gullet Qantas case out of Tennessee that cites to a Fifth Circuit decision where the airline in that case was Qantas tries to say, well, these are all independent contractors. And the Fifth Circuit basically says that's not really. We don't care like we don't. First of all, what label you put on it doesn't really matter. The law determines whether or not you're actually an agent or not. But when you authorize an intermediary to sell, that would not promote fair play and substantial justice. If you could just put that intermediate there and then prevent yourself from being hailed into court. How do you reconcile that with the cases about parents and subsidiaries that Judge Italiano mentioned? Because this seems to be a for sure from those. And then whatever sort of control or relationship there is, it's less than you have in that context. And there we've said that you can't necessarily impute the contacts of the subsidiary. And actually, I don't agree with that. I mean, if I'm looking specifically at the Yamaha case and how they were trying to establish subsidiary liability, it was more of just like you're the parent, you're the subsidiary, parent has control without really establishing anything significant there. It was just more of that general thing that people like to throw out there is that it just a parent has this domineering control of the subsidiary. And I think they also got into alter ego. And it was more of like a, you know, throw everything at the wall and hold something, you know, kind of sticks where if you look at these kinds of cases that just deal with an authorized sales agent, right, where you're actually authorized a sales agent to sell, those ones, from what I've seen in the cases, have all found that that was sufficient authority to establish an agency relationship, limited, but such that you could find jurisdiction on that basis. Or maybe you should, would it be better to think of it just as a sales, you can impute the sale as a sale that is a contact and not talk about agency at all? I mean, do you think we need the concept? I don't think you do. And actually, if you look at your Shopify decision, the brisking case, what did you have there? There was no direct relationship between the plaintiff and Shopify. Shopify contracted with a third party to acquire data information of the resident, you know, Californians. But that wasn't discussing an agency relationship. You just kind of had a sales relationship between Shopify and the party that plaintiff actually did contract with. And you found jurisdiction sufficient there under purposeful availment. I think that is kind of the same scenario that we're talking about. Same with the shoot decision for Carnival. Again, it was a commission arrangement. A sales agent sold that Carnival ticket in exchange for a commission. And that sales arrangement was sufficient to establish jurisdiction because the contract here is between Mr. I should interrupt you because we have you over your time. Sorry. I'll still give you two minutes for rebuttal, but let's hear from the other side. The contract is between my client and Air India. It just was arranged through a third party. And so I don't know that you need to get into the agency relationship that you're discussing. Thank you. Good morning. May it please the court. Ivy Nowinski of Condon and Forsyth on behalf of Apelli Air India Limited. Can you guys hear me? Okay. It's a little quiet, but I don't know that's. Just need to stand a little closer. That's great. All right. This court should affirm the district court's decision dismissing Mitchell's lawsuit for lack of personal jurisdiction and declining to permit jurisdictional discovery. The only issue before the court is whether it may exercise specific personal jurisdiction under the facts of the case, which are as follows. Mitchell alleges that he booked. We know the facts. So could I just go ahead and ask a question? Of course. So do you concede that if this if United had done all of the flights, so United actually operated every every leg that United would be liable? Yes, Your Honor. And so is the only difference here that Air India essentially hired United to sell the ticket? Well, Your Honor, I would I would disagree with the characterization that that Air India hired United to sell its tickets. And to expand on that a little bit more, I think that the relationship between United and Air India in this case is actually very different from a parent subsidiary relation. I didn't say as a parent subsidiary. I mean, they could hire me to sit at SFO and sell tickets. I mean, they could hire anyone. It seems like they have an arrangement where United sells tickets on their behalf. And why isn't that how we should understand it? Well, Your Honor, in similar cases, evaluating, for example, an airline's relationship with its travel agent that has not been held to be sufficient, for example, in Fisher v.  In that case, Qantas was the operating carrier and had a travel agency in Arizona that was that sold a Qantas ticket to the plaintiff who was then injured on a Qantas flight in. I'm sorry, I'm mixing up the facts, but he was injured over in either New Zealand. I think it's a district court case, though, so we have to figure out if the district courts have been deciding this correctly. So why? So if Air India, let's go back. If Air India had sold the ticket in San Francisco, would you agree that Air India had liability? If it had been booked directly through Air India's website to a passenger in California and the passenger was then injured on an Air India flight in India, then I think, yes, I would concede that, Your Honor, if it had been sold directly to a California resident by Air India. Yeah, I think that has to be right. And so then I'm just struggling with why the idea that Air India essentially has someone else do the contacting, tell them what to do. Why that should make a difference? Well, Your Honor, I think it's a little different than that. I think what we have here is Mitchell reaching out beyond his home to his home state of California in an affirmative act to purchase a ticket or contract of carriage within the state of India or within the country of India, rather. We have actually the plaintiff himself who reached out. It is not United who reached into California. I mean, I have to say I'm a little bit surprised by your answer to the question of, like, would it be the same if Air India had done it? I'm not sure that had to be the answer, but if that is the answer, I too, then, I'm struggling to see why it makes a difference that the person or, I guess, website that he buys a ticket from in California is an employee of Air India or an employee of a different company that has a contract with Air India. Either way, Air India has decided to have a relationship with somebody in the forum state who's selling tickets to people. Let me give the caveat here that in connection with Judge Friedland's prior hypothetical, I think Air India would also have to carry the plaintiff out of the state of California. Air India would have to be performing all of the legs of that contract of carriage in order to keep that connection with California that was articulated by the majority panel in Doe v. Lufthansa. There, the court found both purposeful directions. Then you're saying that if he's planning to get to India on his own in some other way and he just walks up to the counter at LAX and there's an Air India employee there and he says, I want to buy a ticket from Mumbai to Dubai and they sell it to him, then you say no personal jurisdiction. It would be difficult for me to say that if a plaintiff had actually formed a contract of carriage in California with the actual carrier, that there was no personal jurisdiction. But I think that under Williams v. Yamaha, the situation is different here because Air India, I think it's rather absurd to argue that Air India has any control whatsoever over United Airlines. What if it were purely an action on a contract action? So he buys the ticket from United for a carriage on Air India and he gets to Mumbai and they say, we have decided not to fly you. So then he has to arrange other travel and sues for the increased cost just on the contract. And so the question is, is that purposeful availment? Yeah, I mean, he's just suing to enforce the contract which he formed with United on behalf of Air India in California. Isn't that the issue? What's United? The contract is with United. United books it on Air India, as I understand it, on behalf of Mr. Mitchell. Mitchell is dealing with United. United is dealing with Air India. And there is no direct contract between, at the point of purchase, between Mitchell and Air India, is there? No, Your Honor, I agree with that characterization. And here, I think under Williams v. Yamaha, the Ninth Circuit has said, it's actually Judge Smith who wrote the dissent in Doe v. Lufthansa. You know, he held in or the panel held rather in that case that, you know, even assuming some, you know, some form of the agency test survives Daimler and Ronzo v. Nike, that the plaintiff must show substantial control. And I just I don't think there's any allegation of that. And in fact, plaintiff's allegations of agency in the complaint are identical. I'm struggling, though. So can we go back to just the fact? Maybe I don't know if it's a legal question or a factual question, but this issue of who the contract is with, because your answer to Judge Vitaliano isn't how I had been understanding it. I thought that when he bought this round the world ticket, he actually had an Air India ticket for that segment. And so he did have a contract with Air India. But are you saying he didn't? He does have a contract. So he purchased 18 contracts of carriage through United Airlines, including, for example, on carriers such as Thai Airways, who don't even operate to the United States. So that's another fallacy that we have here. So if you know, are we subjecting Thai Airways, who doesn't even operate in the United States to personal jurisdiction? I guess a follow up question is, could Thai Airways say to United, even though we're part of Star Alliance, we're worried about California courts. We don't want you to sell any tickets that start in California or that you sell to a person in California. Well, Your Honor, I don't know the answer to that question. I assume so. But I assume so, too. I can't imagine how else. I mean, it's got to be that Thai, whoever they are, could say we don't want to do business in California. I can't understand why that wouldn't be the case. And if that's the case, why isn't that the amount of control you need for a sale to count as a sale? I mean, we don't need all full agency, but if you're going to delegate your sales to someone else, as long as you can say whether to sell it or not, I don't know why that's not still a sale to you. Well, because, I mean, again, this hasn't really been analyzed, at least by the Ninth Circuit, in the context of a ticket sale, this precise issue. But it has been analyzed in the context of an agency subsidiary relationship. And the amount of control that a that a that a fully owned parent company has over its subsidiary is so much more substantial than that exercise by United here. If you're using Williams for that, though, Williams specifically said they didn't present any facts of any control. And so they just move on from that. Once they say the general test doesn't apply anymore, they then say, and there were no other facts of control. So done. I mean, I don't think we know what amount of control would be needed. And they also have the footnote, right, that says we're not talking about specific jurisdiction. I just don't think Williams talked about this. I mean, my reading of Williams is that it requires substantial control by either the parent over the subsidiary, the contracting carrier versus the issuing carrier. It would require substantial control. And again, this is not in the record. There's been no discovery, but I think it's a matter of common knowledge that, you know, any United can just go over there and issue whatever they want on any carrier stock so long as they have an interline agreement with them. The actual airline is not exercising substantial control over that interaction. By the actual airline, I mean the carrier that actually performs the care, it's the operating carrier. I think I misspoke. I don't think there's a footnote in Williams. I think it's above the footnote where they say that even assuming the validity of some formulation of agency analysis such that the subsidiary's contacts could be attributed to its agent's appellants failed to establish specific jurisdiction. I mean, they just don't analyze what that is. Well, I will say that in Williams v. Yamaha, the allegations of agency are virtually identical to those in the complaint in this case. They are virtually identical and they are the same plain vanilla agency allegations that are typically in a complaint. There's no allegation and nor is there any evidence before the court. Is Williams this thing about a sale on behalf of someone else? I believe in Williams, the wholly owned subsidiary of Yamaha was selling outboard motors in California. Yes. I guess, well, one difference though, okay, this gets to another question I have about K2, but in Williams, there would have been someone in the forum who you could sue who sold the motor. Whereas here, you either can get to Area India or you can't. There's no way to sue Area India in the United States or anywhere in the United States on your theory. For this contract of carriage? No. No, Your Honor. So has anyone litigated a K2 theory? A 4K2? Your Honor, I'm not sure that I'm prepared to discuss 4K2 today. I'm only vaguely familiar with 4K2. But happy to submit a supplemental brief if Your Honors would like on that issue. But it hasn't been, 4K2 hasn't been asserted as a basis for personal jurisdiction by plaintiff here. As a policy matter, if, like, does it seem troubling that no one could be, that Area India could not be sued in the United States for this? No, Your Honor. No, Your Honor. Not to me. You know, when you make a contract of carriage to fly around the world, when you affirmatively put yourself out there and travel to remote locations, and in fact, when you don't make those contracts directly with the carrier themselves as well, so there's, Area India is another layer removed here. Nobody went to Area India's interactive website in California and bought this ticket. I think you take that risk that if something happens to you there, you have to sue there. And, in fact, Plaintiff's Counsel has advised that plaintiff doesn't tend to file suit in India. I think we've exhausted our questions. Thank you. Thank you, Your Honor. Let's put two minutes on the clock for rebuttal. Thank you. And if there's any particular place you want me to start, I can certainly start. I guess what is your best answer to the Williams v. Yamaha that it's equivalent because it's a sale? Yeah, and I don't think Williams v. Yamaha is the same in that respect. I think you have a very different scenario than that case. I mean, I think you're hitting it on the head as far as what the control is. And Area India, I mean, again, this almost begs the reason why there should be jurisdictional discovery. But to the extent that you can rule based upon what's on the record at this point in time, it is entirely logical and common sense that Area India, when it enters into this interline agreement, can say, sell here, don't sell here. It has those options. And when it relinquishes control and says, you have control. You believe they have those options? We believe. Again, this is why we asked to see the contract and jurisdictional discovery so we can say but all we had was the representation of counsel and oral argument is that there is an interline agreement that allows United to sell Air India tickets in exchange for a commission. And that's relinquishing control. I mean, that is on that particular thing, a complete relinquishment of control of who United can sell to and as part of what package. And that's where I say, again, I go through the different cases. And that is the defining fact that where a district court is either finding or not finding purposeful availment. If you look at the one case that counsel cited, the Fisher v. Qantas, that was the issue, was that the travel agent had no relationship with Qantas. The airline flight that was coming out of Arizona had nothing to do with the Qantas package. It was a United flight and United had nothing to do with Qantas. The fact that this is a packaged deal is kind of what Your Honor was saying before. You can treat it as if Air India was doing everything. What is your theory in suing United and then letting them out of the case? So under the Montreal Convention, as far as what airline you can sue is very limited. And so because it was very clear based upon the designation of the flight number, it was an Air India flight. It wasn't a United flight with a co-chair arrangement under the Montreal Convention. We could only sue Air India. But it actually does bring up a point, Judge Friedland, you were asking about the, you know, is it fair that you can't sue Air India anywhere? Well, you can sue them in India, actually. In India, which is... Well, that brings up a question I wanted to ask, which is if we were to rule for you here, presumably they will file a motion to dismiss on the basis of firm nonconvenience. And in response to that motion, what will you say? Well, I think part of it is because you have the analysis of the last prong of personal jurisdiction where you kind of go through that similar analysis. And in the closest case, this court just dealt with Doe versus Lufthansa, fairly similar. I'm not sure I view the last prong of personal jurisdiction as co-extensive with firm nonconvenience. But I think that it actually is more convenient to do this case in California because the majority of this case is not about what happened in Air India. There's video, there's photos. That's not really part of it. It's going to be what are the injuries and what's the medical treatment. And that's all here. And so I don't think that there would be an issue on firm nonconvenience. But firm nonconvenience basically assumes jurisdiction. Right. Correct. So therefore, assuming personal jurisdiction, it's still not convenient. Right. So therefore, what Judge Miller is asking is a very, very viable question. Right. And I would say that I don't think that there would be an issue of that given, again, with technology today, having depositions done remotely is not an issue. The medical providers for Mr. Mitchell are all here. He is here. Air India operates in California. So I don't think that there would be that issue. And I think we successfully defeat such a motion if one were filed. But it gets to the point of even though the Montreal Convention, you look at it and has that one prong that talks about where, you know, the airlines can be sued. And I know that's a subject matter jurisdiction as opposed to a personal jurisdiction. But I think it is relevant. The fact that the Montreal Convention added specifically that an action can be brought in the forum of the passenger. And if the flight is basically originating and ending there, which is exactly what we have. And I think it was contemplated that a carrier such as Air India would not be able to escape jurisdiction in the United States based upon basically saying that I'm only allowing a third party to sell my ticket. I'm not doing it directly. But there's been no discussion of federal rule of civil procedure for K2 in this case.  Thank you both sides for the helpful arguments. This case is submitted.
judges: FRIEDLAND, MILLER, Vitaliano